The Honorable Judges of the United States Court of Appeals of the Third Circuit. O.J. Coley, the Office of Justice of the Honorable United States Court of Appeals of the Third Circuit. I'm honored to draw your attention to the report that is now in session. Dr. United States, this is an honorable report. Please be seated. Good morning. We have two cases this morning, and the first is Reilly v. City of Harrisburg, No. 16-3722. Mr. Mehat, is that correct? And Mr. Autry, whenever you're ready. May it please the Court, Horatio Mehat, on behalf of the appellants Colleen Reilly and Becky Bider, I would reserve five minutes for rebuttal this morning. That's fine. This Court should reverse the District Court's denial of a preliminary injunction because the District Court improperly shifted the burden of proof on narrow tailoring onto the appellant. The District Court correctly found that the city had not sufficiently considered other, less restrictive alternatives to the ordinance in suit. Well, in adopting the ordinance from Planned Parenthood, which obviously around the country had considered narrow tailoring, isn't it, per se, easy to see that they did consider it vicariously, if not reinventing the wheel themselves? Not in this case, because in this particular case, the District Court found that it was unclear, even after giving the city every opportunity to develop the record in its favor, in the preliminary injunction briefing, after the briefing was complete, through additional declarations, all of the evidence that the city had on narrow tailoring, it provided to the District Court. And then the District Court actually found, in the order on pages 35 and 36, or 34 and 35, rather, that it was still not clear what the city had done. Well, by adopting the Planned Parenthood plan, they obviously adopted everything that Planned Parenthood had done. And that is not sufficient. Planned Parenthood, its objectives here are not the same as what the city should be. But Planned Parenthood throughout the country has developed ordinances that were narrowly tailored, and in adopting what Planned Parenthood has done, they have adopted the consideration of narrow tailoring that Planned Parenthood has done. Actually, respectfully, Your Honor, I would disagree. Throughout the country, Planned Parenthood has drawn ordinances that have been rejected. And some of them have been rejected? Some of them have been accepted. And the ones that have been rejected have been a learning lesson on what is acceptable, right? Yes, but this particular ordinance is actually worse than many that have been rejected, because this particular ordinance is much broader than the one in Bruny, for example. In Bruny, we had a 15-foot ordinance that only applied to clinic doorways. Here, we have one that's not only larger, 20 feet, but it actually applies to doorways and driveways. So what this particular ordinance does is it completely forecloses the most significant channel of communication for the appellant, leafleting cars as they're pulling into driveways. But they can't stop them as they're pulling in because they're in a traffic lane. Actually... For public safety, don't you have to let the car get in? The evidence is undisputed that at the Planned Parenthood clinic in Harrisburg, you will see this on page 152 of the appendix, there is a parking lane right adjacent to the sidewalk. Cars are able to stop in the driveway to receive a leaflet or a pamphlet without blocking the traffic. In the entire history of the city of Harrisburg, there's not been one accident at the Planned Parenthood clinic. But at the other clinic, it is a problem. Well, at Hillcrest, it's not a problem. Since the first car drove through the streets of the city of Harrisburg, there's been one accident at Hillcrest. Now, the city already has ordinances that prohibit the blocking of traffic. If this had been a problem, if the city had shown a record of violation after violation needing some kind of a solution, the city has at its disposal an ordinance that prohibits blocking traffic. It did not need to pass this ordinance that also applies to Planned Parenthood where there is no traffic problem indisputably in the record. Can I just ask a quick procedural question? Do you have a trial date in this case? We do not. Have you sought a trial date in this case? We have not. The district court below stayed the litigation pending the outcome of this appeal of the preliminary injunction. Including discovery? Correct, but the parties did a fair amount of discovery as part of the preliminary injunction proceedings. This is not a case where the city was caught by surprise or where the city did not have an opportunity to fully develop the record in its favor on the question of narrow tailoring. The city sought leave to provide declarations and it did so. And even after receiving all of the evidence that the city had on the issue of narrow tailoring, the lower court said it is not clear what they considered and whether they considered it seriously enough as this court wrote, Judge Jordan, you wrote in the Bruni decision. Well, I'm a little curious why the lower court would stay and why you would go ahead and be happy with the stay and be pressing for a preliminary injunction instead of trying to get a full record and get a trial. What's the thinking there? Because in this particular case, the lower court actually found that the city had not carried its burden of proof on narrow tailoring as a matter of application of basic law. At a preliminary stage, right? Well, at a preliminary stage, but what the Supreme Court teaches in both Gonzales and Ashcroft is that the city has the burden of proof at the preliminary injunction in the same way that it does at trial. And in the Ashcroft case, the Supreme Court said that if the government... No question, no question about that, Mr. Mihad. My question is purely one of procedure. I'm not sure why your clients are content or apparently content to have a stay in place and be fighting this on a preliminary injunction record instead of saying to the court below, listen, we're going to take it up, but we want the case proceeding to a trial in a hurry. Because on the issue of narrow tailoring, Judge, there is no other evidence to be had. Everything that the city has, the city has put forth, and the record is as complete now on that issue as it will be after any discovery or trial. Isn't part of the argument also that you're saying that on the success on the merits prong, the court applied the wrong burden in this particular case and that the court should have gotten to, at the very least, irreparable harm and it didn't? Correct. And so what is the irreparable harm here? The irreparable harm here is the denial of a cherished First Amendment right, the right to speak freely. What this ordinance does is it completely cuts off the sidewalk and the driveway to these plaintiffs. Their declarations say that they have been completely shut down. They are unable to peacefully have the one-on-one quiet conversation that they could have before this particular ordinance. L. Rodney Byrne says that every day that passes, that that continues to be the case, is an irreparable injury. Could you cite us a case where there was a finding by the district court of no likelihood of success on the merits, where despite that, the other aspects, the three other considerations for preliminary injunctions or injunctions were not considered? In other words, if you have no likelihood of success on the merits, isn't that it? Has anyone ever issued an injunction where there was no likelihood of success on the merits? It's usually a balancing factor, but that is a very important factor. When you have that factor, is there any case that has ever granted the injunction? I'm not sure, Your Honor. The likelihood of success on the merits is an important factor and that's why reversal is appropriate here because the court What you're saying is in light of Ashcroft and Gonzales, you have at least a reasonable likelihood of success. Well, absolutely. Not only that, but in Ashcroft, Well, then that's a complaint not about the finding of the consideration of no likelihood of success on the merits, but that was wrong, which is another thing. But when simply considering the four elements to consider before granting an injunction, if there is no likelihood of success on the merits, has any court ever needed to go further than that? I'm not sure, Your Honor. I think the likelihood of success on the merits factor is very important in the analysis. We would contend that that finding was wrong and we would contend that once that finding is looked at and remedied, all of the other ones fall into place because it is an irreparable injury to enforce an unconstitutional statute. Now, the Ashcroft decision on page 666 says that once the government does not carry its burden of proof on narrow tailoring at the preliminary injunction stage, the party challenging the statute and seeking a preliminary injunction, quote, must be deemed likely to prevail, end quote. That's from the Supreme Court. So here, once the district court found, correctly and properly, that the city had not clearly shown what other alternatives it had considered, had not clearly complied with the Bruni standard for narrow tailoring, the district court had no discretion to find that the appellants were unlikely to succeed. So let's assume because of that re-altering of the burden in Ashcroft v. Gonzalez, there's a reasonable chance of success on the merits. Yes. And you've talked to us about the irreparable harm. What about the harm to the other side? There is no harm to the other side here because there is no record of confrontations taking place at this clinic. What else has the city put in play that is the important government interest? Well, the city says that it wants to coordinate the access to health care and stop sidewalks from being impeded and traffic from flowing smoothly, all worthwhile interests, all of which can be met with the existing ordinances that the city has. Well, what you're doing is balancing, but you initially said there's nothing, but there is something on the other side. There are arguments as to why there are important government interests at play here, correct? We're not doubting that, Your Honor. The city does have important interests here. What we're saying is that the city can meet those interests with existing ordinances, or if it chooses to have additional legislation, the city can legislate more narrowly. For example, if banging on a window or peering through a window is a problem, as we're told in the pleadings, the city can pass an ordinance that bans banging on windows and peering through windows at health care facilities. The appellants have no interest in doing that. All they want is to be able to carry on these quiet one-on-one conversations that they were able to do before, but which they're unable to do now. There's no record in the city's police reports, for example, which are attached to the Chrisman Declaration in the appendix. You see report after report from the police saying we showed up, we responded to a call, no problem at this time, no violations, no crime, no reason to interfere. One after another. You would think that if there was, in fact, a problem as Planned Parenthood, the party that drafted the ordinance, contends, the city would be able to put forth some police reports. There's never been one prosecution, one arrest, one citation. Let me go back to Judge Jordan's question. Yes. If you appeal only the preliminary injunction denial, why not ask for an expedited hearing on the merits? Because you're playing a long game here. A P.I. is just a short game. We believe that the appeal on the P.I. can be dispositive of the entire case because the case law is so clear now after Bruni and McClellan that this case can and should be decided on the record that's already been developed. There's no need for additional factual development here. The court has everything before it because the evidence of narrow tailoring. That's certainly your view, Mr. Meehan. We'll hear from Mr. Autry, I'm sure, from the city's perspective on that. But assume you're right and we could decide this. You've played the overbreadth card here as well. We said in Brown that overbreadth is not the doctrine that should be employed for analyzing these kind of ordinances, right? What's changed since Brown that makes that part of Brown? Other things have changed that have overtaken Brown, but what's happened to make that part of Brown inapplicable? Well, what you said in Bruni for the court, Judge Jordan, is that the issue of overbreadth is also quite relevant to the issue of narrow tailoring because the broader the statute sweeps, the more effort the city has to show that it narrowly tailored the statute. And so since Brown, we have had McClellan and Bruni, both of which come in and say that the issue of narrow tailoring is now paramount in this area. The city cannot simply say that other alternatives would not work as the city has done here. The district court, in its order, says the city merely says. That's no longer sufficient. Now what the city has to do is come forth with actual evidence of seriously considering, if not actually trying, other alternatives. There is a panoply of other alternatives here that the city could have tried, but that it's undisputable the city did not try. That's what makes this case problematic, and that's what makes this case different from Brown. Is there a way that one might be able to distinguish Gonzalez and Ashcroft? I mean, in those cases, you had content-based ordinances or regulations, did you not? You did, and actually that's the argument that the city makes here, that Ashcroft only applies to content-based determinations. However, that same argument was tried in Gonzalez, and the Supreme Court in Gonzalez actually says in a long block quote that we have in our reply brief that Ashcroft cannot be so limited in that fashion. Ashcroft applies across the board. Anytime you have a restriction on speech, the government bears the burden of proof at trial, which means the government bears the burden of proof to show that the ordinance is constitutional at the preliminary injunction stage. So that argument has already been rejected by the Supreme Court. That's a good segue, then, to get Mr. Autry up, and we'll get you back on rebuttal. Thank you. You've been very indulgent. Thank you. Good morning, Your Honors. I think when we talk about the burden... Say your name for the record. Josh Autry, representing the city of Harrisburg. I think when we talk about the burden that the trial court applied at the preliminary injunction stage, it's important to recognize that the trial court was applying the preliminary injunction burden as this Court has laid it out. The plaintiff cites two Supreme Court cases for a burden shifting. They cited neither of those cases below. Both of those cases were strict scrutiny cases, and this case is not. This case requires, as all preliminary injunction cases do, that the burdens at the preliminary injunction stage track the burdens of trial, right? To some extent. The burden is on the moving party at a preliminary injunction. This Court has repeatedly said that the burden is on the moving party. The Supreme Court said that the burden pushes to the non-moving party in Ashcroft in a content-based situation because it's not presumptively valid. It said the same thing in Gonzales. Yeah, I'll just quote you Gonzales. Quote, the point remains that the burdens at the preliminary injunction stage track the burdens of trial. Unquote. Did the Supreme Court just not understand what it was saying? Your Honor, I do not believe that the Supreme Court was trying to overrule its prior precedents on whether something is presumptively valid. And in the case of Gonzales, it was talking about an RFRA situation, and it said that like Ashcroft, this requires a compelling interest and it requires that strict scrutiny standard like Ashcroft. This Court in child evangelism, this Court has repeatedly in First Amendment cases, put the burden on the plaintiffs. And the trial court did the same. The plaintiffs on appeal in this case cite new Supreme Court precedent. Now, it's not new. It's 2005, 2006, but they didn't cite it below. They expected the trial judge to go look for it and find the case on its own. Realistically, when you're considering the likelihood of success on the merits, don't you have to consider who would have the burden of proof in a trial to develop the merits? Correct, which is generally speaking on the plaintiff at trial, the burden to prove their case beyond a preponderance of the evidence. The burden shifts in strict scrutiny cases when you get over that burden initially to show that something is content-based. And then the government bears the burden actually to go beyond. In assessing likelihood of success on the merits, don't you have to consider that whole process? You do, Your Honor. And the Supreme Court has consistently said that content-neutral ordinances and statutes are presumptively valid, content-based or not. And so at trial, you would have that burden on the government to be the person or to be the side that has to demonstrate the preponderance of the evidence in a content-based scenario. We don't have that scenario here. Well, that's the whole question, right? That's the whole question, whether you've got a content-based restriction. Now, in Bruny, the discussion was about picketing and demonstrating. And based on Reed, there was a determination that that constituted something that could be viewed as content-based, right? This Court in Bruny did not decide that the Pittsburgh Ordinance was content-based. This Court in Brown decided that it was not. Right, but Bruny was pretty clear in saying Reed changed the ground under Brown, right? Your Honor, and it's obviously going to be difficult for me to quibble over your words because you wrote the Bruny decision. The way I read Bruny was that this Court acknowledged that Pittsburgh had an argument or the plaintiffs in that case had an argument that Reed changed the standard. This Court did not hold that Reed changed the standard. So let's assume that you're right, okay? They've got an argument. Doesn't that mean that there's a likelihood that these people should have a chance to go forward and make their case and that that's something that Judge Rambo should have been paying attention to and deciding whether there was a likelihood of success? I believe Judge Rambo did. Judge Rambo denied the motion to dismiss, which we put forward. That's the critical difference between this case and Bruny. Bruny was the appeal of a grant of a motion to dismiss by Pittsburgh. This is the appeal of the other element. There was a PI that was denied in Bruny that wasn't in Pittsburgh. So let's look at the stage we're at. You've heard your opponent say that there's nothing else they've got to put in the record, that the city put everything they've got in. There's no more factual development to be done. Is that an accurate statement? No, Your Honor. The city put forth some declarations to show that they had considered things like face and the trespassing statute or ordinance and things like that. So you think you've got some more that if this had further factual development, you'd be able to add something to it if you went to trial? Absolutely, Your Honor. And one of our arguments for waiver of the Ashcroft argument that's advanced from appeal that wasn't advanced below is that if the plaintiffs put forth any legal precedent to show that the burden was on us at the PI stage and not on them, we would have requested a full trial. If they argued below and cited a single judicial decision from this court or the Supreme Court to support that position that the burden was on us just identically as it is on trial, as they're arguing here, we would have requested a full hearing, a full trial on that. I get the feeling maybe we're talking past each other and you say the burden was on us. I thought we'd sort of come to some kind of consensus here that the burden may be on the move-in to show a likelihood of success, but that in making that judgment, the court, the district court, has to take into account the burdens at trial, that that's something that the judge has to look at in order to assess likelihood of success. Have we backtracked off of that? No, I completely agree with that, Your Honor. But it is a different standard than just the pure trial standard. It is a preliminary determination. Yeah, precisely. And that very fact that it's a preliminary determination is what means, is why when we say likelihood of success, we don't mean more probable than not. We mean there's some credible shot that these people have that should allow them to have a further opportunity to develop their record and to make their case and that that should be then assessed along with the other elements. That that's when you don't just cut the thing off at likelihood of success saying you didn't show more probable than not. You make the kind of assessment we've just been talking about, and then you look at irreparable harm and you look at the other factors. That's a balancing test that's supposed to happen at the PI stage, right? Yes, Your Honor. But it didn't happen here, did it? Well, I believe the likelihood of success is not just a factor. It's a prerequisite. Yeah. Remember, it doesn't have to be greater than 50%. In other words, is there a reasonable likelihood of success? You pick the percentage, 30%, 40%, I don't know. But it's not 50, 1. And once you have something that there is a reasonable likelihood of success, you go to whether there is irreparable harm. Now, irreparable harm they're going to have to show at the PI stage greater than 50%. But the court didn't even get there. And that seems to fly in the face, at least by analogy, to what we decided in Ray Revel, which dealt, I realize, with a state pending appeal, but the concepts are the same. Your Honor, the trial judge is not the only court to do that. The Supreme Court has also, in the PI stage, resolved the question on whether or not the plaintiff is likely to succeed in the Winter decision. And it said in the Winter decision that it's not purely, you know, beyond 51%. It is whether the plaintiff has put forth a clear showing that they're likely to succeed. In light of Ashcroft and Gonzalez, they have an argument that the burden was placed on the wrong party here in the First Amendment context. Your Honor, my first argument on that is that those cases involved a compelling interest standard, a strict scrutiny standard, which at trial would put the burden on the other party. My secondary argument on that is that if this court agrees with them that the trial judge applied the wrong burden standard under Ashcroft, under Gonzalez, that this court should remand for the trial court to apply those decisions that plaintiff didn't cite below. The trial court did not consider those decisions below, nor did we, because they weren't cited. The trial court should consider this court's precedent on the PI standard before and after those decisions. So wait a second. You think that the most efficient route forward in this case is to remand it for reconsideration of preliminary injunction instead of remanding it just to get this thing on for trial? Your Honor, I think the most efficient thing to do would be to affirm the decision, and we go back for discovery, and we go forward to a trial. I believe if this court concludes that the trial court applied the wrong evidence standard because of a standard that plaintiff cites on appeal that they didn't cite below, then this court should give the trial court the opportunity to consider that standard that wasn't cited below. Now, your whole argument depends on the assertion that this is a content-neutral ordinance, right? Yes, Your Honor. Okay, so why don't we talk for a minute about Reed v. Gilbert. Would the ordinance as currently worded, would that apply to somebody, to panhandling, somebody sitting on the curb and asking for money? The language is congregate, patrol, picket, or demonstrate. Okay, so panhandling isn't picketing or demonstrating or congregating, right? No, and it's probably not patrolling. Right, so a person could panhandle, could ask for money. How about just a person soliciting business? Suppose that it were an accountant or, heaven forbid, a lawyer with leaflets saying, come use my services, would that be covered by the ordinance within 15 feet? It could potentially be demonstrating, depending on how they're doing. How could that possibly be demonstrating? Just handing somebody a leaflet that says, I'd like you to consider my business. Under what possible definition is that demonstration? Under that scenario, that would not be demonstrating. Okay, but the same person couldn't do that, right? Couldn't hand out a leaflet that said, don't go in there because this is an abortion clinic. That's covered? I believe that would be covered, Your Honor. Okay. What about a labor strike? That would be demonstrating and potentially picketing, depending on if they're holding pickets. So it would be covered? And it could be congregating if there's multiple. So it would be covered? Yes. Stick with me on Reed here for a minute. So if I can hand out a leaflet that says, come use the services of Amber Roth and Jordan. Of course, they probably don't want to be in the same firm with me, but assume they did. What's the firm about? Yeah, I could hand out a leaflet that says that and describe my services, but I can't hand out a leaflet that says you shouldn't be getting an abortion. How is that not content-based? Your Honor, I believe that this Court, if you apply the precedent in McClellan and Hill, which is still good law. McClellan didn't change that. Hill found that was content-based. But did Reed change it? That's the question I'm putting to you. Did Reed change that? Reed said, you've got to look at how it affects the speech. And Reed was quoting Ward v. Roark against racism, which is a pre-Hill and pre-McClellan decision. Reed was not changing the standard when it announced that. And Reed was decided based upon the textual element of the test. The first is you look at the language. And in that case, you looked at language that specifically set up different categories of speech based upon whether you're a nonprofit, this, that, and the other. And the Supreme Court said that textually, that ordinance gives different restrictions based upon who's speaking. So isn't this exactly the same? How is this different? The person who's speaking in one instance is an anti-abortion advocate. The person who's speaking in another instance might be a homeless person asking for money or a business person soliciting business. But you have made a distinction with your ordinance based on what that person says. But what about the labor union striker? They don't have to be saying anything about abortion. Your Honor, and this is where I believe that Hill and McClellan are the right precedents to apply here because they're dealing with the same scenario. They're dealing with the same scenario? Right. So you're saying Reed just doesn't have any applicability here? You don't think it means anything in this context? I don't believe it changed the standard that was set up in Hill and that was followed in McClellan on what's content neutral. I don't think the Supreme Court subsequently was. What does Bruni mean? Sorry, I meant to say Hill and McClellan. If I said Bruni, I was mistaken on that. You didn't. I'm asking you. I'm sorry. I thought I misspoke. Bruni takes Reed and understands it as affecting what went before, as undermining Brown, which did apply here specifically. So does Bruni have any relevance or salience in this case? On that issue, the Bruni court did not decide. So that's an open question that Bruni left for this court, and I believe when this court looks at that question, you should apply McClellan and Hill under analogous facts. That question being what? Whether the Reed decision changed the standard that was applied in McClellan and applied in Hill to scenarios similar to this. And in Hill and in McClellan, the Supreme Court looked at a similar question, and the Supreme Court said it's content neutral. And in Reed, the court looked at a different question, and the court said it's content based. We believe that the Reed decision was correct. We believe McClellan and Hill were correct, and they can live in the same world. And they can because why? Because one had to do with signs and the other had to do with abortion? No, Your Honor, because the Reed decision looked at something that set up different categories. It would be like in the Carey decision when the Supreme Court looked at something that said you can pick it unless it's about labor issues, or I believe it was the opposite. You can't pick it unless it's about labor issues. And so Reed was just applying the same precedent the Supreme Court has used over that time when they said you can demonstrate on certain issues and not on others. That's obviously content based. In McClellan and Hill, the Supreme Court said. Indeed it is obviously content based. But Reed said you can't have signs that say, you can't classify signs as political signs and then real estate signs and then directional signs and have different things. So if you can't categorize signs that way, how can you categorize speech as picketing or demonstrating or panhandling or soliciting for business and not entering into the same realm that Reed says is forbidden? Because when you look at Hill that talked about saying that demonstrating and congregating are simple terms that you can understand and that's not content based, this Court should apply those precedents. And McClellan did the same thing. And McClellan unanimously did so. There was no concurrence. There was no dissent. It was not a question that the Supreme Court had much trouble with. And in Reed, the Court dealt with a completely different question. The Court said. Completely different might be a bit of an overstatement. But I take your point. I understand, Your Honor. And if you come to the conclusion that this is content neutral, then you go to the next step. And the next step is do you have a significant interest? And in all of those cases, in McClellan, in Hill, the Supreme Court recognized that it's a significant interest to protect egress and ingress to these clinics. And so then you look at the next question. Is it narrowly tailored to those interests? Are there ample alternatives? Yeah. What were the less restrictive means considered by the city here? Your Honor, the city had trespassing ordinances that were not being effective. They had an ordinance that prohibited you from purely standing in a driveway that wasn't being effective. The city specifically considered face lawsuits against specific protesters. What are we supposed to do with the judge's statement? And maybe correct Mr. Meehat if he said it incorrectly, but I think he was right in referring to Judge Rambo's statement as, in effect, saying it's not really clear what the city considered here. I believe the court was basically saying that plaintiff has not shown that the city did not adequately consider alternatives. And at this preliminary stage, the city has put forth enough to defeat the motion as the non-moving party. That's how I read that portion of the decision. And the city did put forth evidence that this court can look at that it did consider the options that it already had, and it specifically also considered potentially doing face lawsuits to seek injunctions against specific protesters. And the city ultimately opted, considering those alternatives, for a preventative solution, a solution that wouldn't require keeping a police officer there monitoring the situation and would protect the situation, but also was not as significant. Did they consider other successful ordinances or through Planned Parenthood's success with other ordinances? Well, they specifically considered the similar ordinance in Pittsburgh. I mean, it's identical language, basically, to the Pittsburgh ordinance. The only thing that they changed, really, was the driveway addition because of the incident at the Hillcrest where you had a traffic accident where someone stopped a car on the 35-mile-an-hour street. As plaintiffs have pointed out, at the Planned Parenthood clinic, you actually have street parking. Front street, outside the Hillcrest clinic, you don't have that. You just have purely the lane of traffic goes right into essentially the driveway. And if you're leafleting there and you're stopping traffic to hand, you know, whatever you're handing, whatever materials you're handing to drivers as they're coming in, that causes a traffic hazard on that street. And the city has presented evidence that people typically drive faster than 35 there, which is not entirely unexpected. And so that is a problem there. And so that was the thing that the city considered in addition to the Pittsburgh ordinance. It added that driveway restriction because of the problem at Hillcrest clinic. And Harrisburg has put forth evidence that it considered different options, and it would present more evidence if we got to an ultimate ruling. I mean, if we got to an ultimate trial, we would present testimony, we would present. Of what? Can you make a problem? What do you got? Just curious. We would actually present testimony of the incidents at the clinic, of the problems, of the police issues with having to deal with those. Being called out to the clinics was very difficult for the city at the time. The city at one point was down to only four patrolling officers. So this is not new evidence. This is evidence that was available to you all along and could have been put forward in the preliminary injunction hearing. Yes, Your Honor. Okay. We're not reinventing the wheel. The city would put forth more evidence. They would elaborate on the evidence they had. At the preliminary stage, they put forth declarations, essentially showing the issues that they had and showing what they were considering. And the trial court considered that sufficient, with the burden being on plaintiffs, to show that they meet the preliminary injunction test. And we believe that the trial court correctly ruled there and that this court should affirm. Let me go back to the content-neutral point for a minute. The ordinance creates buffer zones around health care facilities for the purpose of promoting public safety. And you argue that is content-neutral. Would the same be true if a buffer zone was created around a house of worship? I think in that scenario, it would run risk of being a foul to the Reed situation. If you're only limiting speech around religious facilities, you could be potentially trying to limit religious speech. And so I think that that scenario, that would be like only doing it around a house of worship. Labor facilities, for example, you could run the risk of being a foul to Kerry in that scenario by doing it in certain areas to specifically limit certain types of speakers without being justified by the interest. And the Supreme Court has held that it is a content-neutral interest to protect ingress and egress to health care facilities, and that's the exact interest we're talking about here. That has been affirmed by the Supreme Court as content-neutral repeatedly. All right. Thank you very much. Thank you. Mr. Meehan. Please, the court. Judge Jordan, it turns out we did file a motion to expedite this appeal. It was not opposed by the city, but a motion panel of this court denied it on October the 7th, 2016. Because the city continues to press the distinction in Ashcroft, Your Honor, I feel compelled to... I was actually asking whether you had filed a motion to expedite trial. If I said appeal, I misspoke. In other words, I'm wondering why the quickest route to where you wanted to get wasn't just to say, look, let's combine preliminary injunction hearing with the trial, or if we're going to have PI at least get an expedited trial. Was there any effort to do that? There was not, because the record was fully developed at the PI stage. Well, evidently not. Mr. Autry, you're telling us that's just not so. You may think it's so, but they don't think it's so. But, Your Honor, think about it. He did not identify any additional new piece of evidence that they could present now, and it makes sense. Whether or not the ordinance was narrowly tailored is not something that is within the knowledge of the appellants, where they have to depose my clients to find out what the city did or did not consider. All of that evidence is in the possession of the city. The city knew what it had done prior to passing the ordinance. The city had every opportunity to present that to the court, and yet the city failed to convince the district court that it had done what it needed to do. But the city did not at that point realize it had the burden of proof. Now, correctly or incorrectly, according to what the court was telling the parties, the city did not know at that point that it was going to have the burden of proof. Your Honor, in our reply brief, we addressed the issue of waiver, and we cite maybe half a dozen instances in the PI briefing where we repeatedly said that the government carries the burden of narrow tailoring. Right. You said it, but the court didn't say it. That makes a difference, doesn't it? And that's the error that we want this court to remedy today. But that is an error that the city was not aware of was error. And Mr. Autry has just said, had we known otherwise, we would have presented additional evidence. Your Honor, respectfully to the city, the city is presumed to know Supreme Court precedent. Ashcroft and Gonzalez were not decided yesterday. So if you all knew it all, why did you go before a judge? We did go before the judge. Yeah, and the city is saying, according to what the judge, the burden of proof that the judge was giving them, they thought they did not have the burden of proof. Now, you're saying the city should have known that otherwise and ignored what the court said? Well, no. When the court was saying something that they liked? The court only spoke on this issue when it issued its ruling. While the briefing was taking place, Ashcroft and Gonzalez were in effect binding Supreme Court precedent. The city was presumed to have knowledge of its burden. And in our briefs, we repeatedly said the city bears the burden of proof. What did the city say about the burden of proof? The city didn't say anything about it. The city missed the boat on this issue, Your Honor, as did the court. And we would ask this court to reverse that. Now, the city continues to try to distinguish Ashcroft. And so I feel compelled to point out the quote that follows what Judge Jordan read. In Gonzalez, the Supreme Court says, the government intends to limit the rule announced in Ashcroft to content-based restrictions on speech. But that distinction is unavailable. That argument has been rejected. Ashcroft cannot be limited in that fashion. Now, with respect to what the city did here, Mr. Autry said that the ordinance on trespassing proved unavailing. And, in fact, the city does have an ordinance. It's not in the record, and I apologize for that. We can submit it as a supplement, or you can take judicial notice of it. 3-341, disturbing the peace. It prohibits the blocking of traffic. It prohibits confrontations, hostile words of aggression. The city had this at its disposal. Now, the city said it's not enough. Where is the record of arrests, of citations even issued, of any prosecution? There is none. The city has never arrested anybody under this. Now, if the city had come in with a record to show, okay, every week we have to arrest 10 pro-lifers for violating this ordinance, we can't do this anymore, we're being depleted financially, we've got to do something else, that would be a very different case. Here, the city comes in, merely says that this would not work, without any record to back that up. That's what this court in Bruny says is not enough. That's what the Supreme Court said in McClellan. It's not enough for the city to merely say something wouldn't work. They have to prove it, and here, if they had the evidence, they would have submitted it. But I really hope you'll take the time to read the Jonathan Chrisman Declaration in the appendix, because it attaches the police reports, and it really is remarkable how not one police report actually finds that something was taking place there. Every one of them says, no crime, no violation. They're doing what they have a right to do. The Supreme Court says this is protected speech. This is the classic case of a solution in search of a problem. Now, both with respect to the over-breath here, In Schenck, the Supreme Court said 15 feet is too far away in order for a quiet conversational tone discussion to take place. In Hills, the court said 8 feet might be enough. It's a closer call, and affirmed that because it was not the 15 feet. So what are you asking us to do? I thought at one point the argument would be that the court applied the wrong burden. Therefore, it isn't an open and shut case for the other side with regard to success on the merits. And the court didn't deal at all with irreparable injury. And therefore, it should be remanded so the court can consider those things and decide. I don't think that's necessary. I think a straightforward application of Ashcroft says that because the city did not meet its burden of proof on merit tailoring, appellants are likely to prevail on the merits. That's what I talked about with the burden. And because they're likely to prevail on the merits, then automatically... But then at the PI, they can still put in something that tries to counter that. Well, they can't because everything they've had, they've given. At this point, if it's on remand, they get another shot at it, don't they? No, because I think this court can say because under Ashcroft the appellants must be deemed likely to prevail, that's a quote from the Supreme Court, then as a result, the irreparable harm, the public interest... You just said presumed, and then you said must. Which is it? It's presumed, right? No, it's must be deemed likely to prevail. That's the Supreme Court in Ashcroft. Before that, you said presumed. So presumed is incorrect? I must have misspoken because what the Supreme Court said... I thought that there was... It has to be a presumption, doesn't it? And I think it was in the case where it said presumption. I think it's unremarkable that if a party bears the burden of proof of something and they fail to meet it, then... That's what we're talking about, right? I mean, you want to say they didn't carry that burden and they had their chance. So they should lose, we should get a PI. And the question that's being put to you is, if there was error in the court below and they were under the misimpression of what they had to show because the district court was under the misimpression of what they had to show, and they say they have evidence to put in, should they not have the opportunity to do that? That's the argument that's been made and the question I think that's being put to you right now, and I understand you're saying, no, no, no, give them a second bite, but why wouldn't it be right to give the district court a chance to apply the right standard and the city to have the chance to apply the right standard? Especially when irreparable harm hasn't even been considered. Why should we consider it? We don't make fact findings. Because if you conclude that the city has not met its burden of proof on narrow tailoring and if you understand that the city had all of the evidence at its disposal. Well, there's where the rabbit goes in the hat, right? Because you say they gave everything. They made their full record. There's nothing they could add. Correct. But we have the representative of the city sitting right there saying, that's just not so. We've got more we could show.  Because what they have is not in the possession of my clients. Finally, quickly, if you would allow me. I'll give you 30 more seconds. Thank you. On the question of content neutrality, Reid is very clear when you regulate speech on the basis of its function and purpose, that is not a content neutral regulation. I believe we've established here very clearly that's what this ordinance does, and there's a very troubling quote in the district court's opinion. We cite it on page nine of our reply brief, where the district court attempts to show that this ordinance is content neutral by saying that it actually bans equally fringe viewpoints, such as opposition to vaccines or plastic surgery. And that was well stated in your brief. That is very troubling. I think it's clear that this is not only this ordinance is content based, and so under all standards a reversal is appropriate. Thank you. Thank you very much. Thank you to both counsel for well presented arguments, and we'll take the matter under.